## In re EXECUTIVE LEASING CORP., Debtor.

### CITIBANK, N.A. (Formerly First National City Bank), Plaintiff,

### v.

### EXECUTIVE LEASING CORPORATION, Defendant.

### Bankruptcy No. B-79-0006 (B).

United States Bankruptcy Court, D. Puerto Rico.

March 20, 1980.

Rafael Perez-Bachs, McConnell Valdes Kelley Sifre Griggs & Ruiz-Suria, San Juan, P. R., Charles B. Manuel, Jr., Shearman & Sterling, New York City, for Citibank, N.A.

Manuel Gonzalez Gierbolini, Santurce, P. R., Charles A. Cuprill Hernandez, Ponce, P. R., for Executive Leasing Corp.

## ORDER

W. H. BECKERLEG, Bankruptcy Judge.

The adversary proceedings herein were commenced on November 21, 1979 upon Citibank's filing of a complaint requesting several remedies, to wit, the appointment of a trustee or an examiner; adequate protection; relief from stay; and findings of contempt against debtor. Accordingly, on December 20, 1979, debtor filed its responsive pleading, advancing with its answer various affirmative defenses and two counter-claims.

A pre-trial conference and a preliminary hearing were held on December 21, 1979. During the pre-trial conference it was *agreed to* by the parties and so *determined* by the Court that the case *had* to be divided in two stages: the first would cover the issues of adequate protection and relief from stay, which were to be tried under the provisions of Section 362 of the Bankruptcy

Code, 11 U.S.C. § 362, both during the preliminary and final hearings provided for by that Section; the second stage of the adversary proceedings would be relative to all other issues raised by the complaint, answer thereto, affirmative defenses and counterclaims, which issues were to be subject to a plenary hearing pursuant to Part VII of the Rules of Bankruptcy Procedure.

Inasmuch as the preliminary hearing under Section 362 of the Bankruptcy Code could not be concluded on December 21, 1979, the parties stipulated and the Court decreed that the final hearing in regard to Citibank's request for adequate protection and relief from stay was to commence on January 27, 1980 at 2:00 P.M.; such final hearing commenced as scheduled, and was held during January 17, 18, 23 and 30 of 1980, with both parties presenting extensive documentary and oral evidence, the issues of relief from stay and adequate protection being thereby submitted; the Court resolved such issues by an Opinion entered on February 29, 1980.

The Court is, thus, left herein with the aforementioned second stage of these adversary proceedings, which involves debtor's affirmative defenses and two counterclaims against Citibank. On December 27, 1979, Citibank filed a "Motion to Strike and to Dismiss" requesting the striking of debtor's affirmative defenses and the dismissal of the counterclaims from debtor's December 20, 1979 answer, alleging such to be pseudo-issues beyond the scope of these proceedings. Thereafter, debtor filed on January 8, 1980 an "Opposition to Motion to Strike and to Dismiss", invoking the legislative history of Section 362(e) of the Bankruptcy Code, 11 U.S.C. § 362(e). We hereupon consider such motion.

■ Based upon the expanded and comprehensive jurisdiction over all cases and civil proceedings arising under or related to cases under Title 11 conferred by Section 1471 of the United States Code and incorporated by the Bankruptcy Reform Act of 1978, and considering the additional expenses that would be imposed to a debtor in distress in the relitigation of the issues at bar, we uphold our power to hear the remaining prayers of Citibank's November 21, 1979 complaint and debtor's affirmative defenses and counterclaims filed on December 20, 1979.

The legislative history of Section 362(e) of the Code, 11 U.S.C. § 362(e), grants the Court broad discretion to hear such matters, provided they are segregated from the informal, expeditious and summary hearings for adequate protection and relief from the stay.

"At the expedited hearing under subsection (e), and at hearings on relief from the stay, the only issue will be the lack of adequate protection, the debtor's equity in the property, and the necessity of the property to an effective reorganization of the debtor, or the existence of other cause for relief from stay. This hearing will not be the appropriate time at which to bring in other issues, such as counterclaims against the creditor, which, although *relevant to the question of the amount of the debt,* concern largely collateral or unrelated matters. This approach is consistent with that taken in cases such as *In re Essex Properties, Ltd.,* 430 F.Supp. 1112 (N.D.Cal.1977), that an action seeking relief from the stay is not the assertion of a claim which would give rise to the right or obligation to assert counterclaims. Those counterclaims are not to be handled in the summary fashion that the preliminary hearing under this provision will be. *Rather, they will be the subject of more complete proceedings by the trustee to recover property of the estate or to object to the allowance of a claim. However, this would not preclude the party seeking continuance of the stay from presenting evidence on the existence of claims which the court may consider in exercising its discretion. What is precluded* is a determination of such collateral claims *on the merits at the hearing.*" S.Rep.No.989 95th Cong., 2d Sess. 5 (1978); *Cf.* H.R.Rep.No.595, 95th Cong., 1st Sess. 344 (1977), U.S.Code Cong. & Admin.News 1978, pp. 5787, 5841 (emphasis added).

Moreover, it is clear from the aforementioned language that evidence introduced at such summary hearings may be considered by the Court in subsequently passing judgment on collateral matters.

There is no doubt in our mind that the issues at bar involve the "more complete proceedings by the trustee to recover property of the estate or to object to the allowance of a claim" contemplated by the Congressional language; furthermore, parties have previously stipulated on the pre-trial conference to the propriety and the need for future consideration of such issues; and, finally, we have received substantial oral and documentary evidence related to this "second stage" of the adversary proceedings herein. The Code's expanded jurisdiction permits this latitude and more.

Under the Act, courts generally refused to permit the litigation of counterclaims and offsets as part of stay litigation even where jurisdiction might have existed for that purpose at some later date in the proceeding. The two commonest grounds were that: (1) the filing of a complaint to vacate the stay was a defensive action and not the assertion of a claim giving rise to a right or obligation to assert counterclaims, and (2) the bankruptcy court did not have jurisdiction to hear matters which it could not otherwise hear simply because of the filing of the complaint. *In re Essex Properties, Ltd.,* supra; *In re Cedar Bayou, Ltd.,* 456 F.Supp. 278 (W.D.Pa.1978); *In re Groundhog Mtn. Corp.,* 4 C.B.C. 387 (S.D.N.Y.1975); cf. *In re White Birch Park, Inc.,* 443 F.Supp. 1342 (E.D.Mich.1978). Under the Code, however, any question of the jurisdiction to hear the matters that might be raised in a counterclaim has been ended. 2 *Collier on Bankruptcy,* 15th Ed., § 362.08[3], p. 362–53 (1979).

Finally, we would like to emphasize the "all-encompassing" nature of the complaint filed by Citibank in these adversary proceedings; the complaint is patently offensive, thus, justifiably, we uphold debtor's affirmative defenses and counterclaims on such attack.

WHEREFORE, it is

ORDERED that Citibank's "Motion to Strike and to Dismiss" is hereby denied.