**In re SAXON INDUSTRIES, INC., Debtor.**

**FOX & COMPANY, A Partnership, Plaintiff,**

v.

**SAXON INDUSTRIES, INC., Defendant.**

**Bankruptcy No. 82 B 10697 (EJR). Adv. No. 83–5468.**

United States Bankruptcy Court, S.D. New York.

Sept. 25, 1984.

Parker Chapin Flattau & Klimpl, New York City, for Fox & Co.

Cahill, Gordon & Reindel, New York City, Corporate Counsel.

### DECISION AND ORDER ON MOTION TO LIFT AUTOMATIC STAY

EDWARD J. RYAN, Bankruptcy Judge.

On April 15, 1982, Saxon Industries, Inc. (Saxon) filed a voluntary petition for reorganization under Chapter 11 of the Bankruptcy Code. Saxon is presently operating its business as debtor-in-possession. 11 U.S.C. § 1107.

There are a total of 39 different actions pending against Saxon and/or Fox & Company, a partnership of certified public accountants (Fox) involving substantially similar allegations. On April 21, 1983, Fox commenced an adversary proceeding to lift the automatic stay with respect to these pending actions, to permit Fox to assert counterclaims or cross-claims against Saxon, or to implead Saxon as a third-party defendant.

During May, June and July 1982, twelve plaintiffs filed class actions in the United States District Court for the Southern District of New York on behalf of all purchasers of Saxon securities, alleging, *inter alia*, violations of federal securities laws by Saxon's officers and directors and plaintiff Fox. On July 12, 1982, these were consolidated by order of the Hon. Mary Johnson Lowe and bear the caption "In re Saxon Securities Litigation" (82 Civ. 3103 (MJL)).[1]

On November 5, 1982, the consolidated plaintiffs filed a complaint against Fox, alleging federal securities law violations, common law fraud, and negligence, gross negligence and malpractice. The plaintiffs claimed that Fox's audits of Saxon between 1975 and 1980 were not accurate and not in accordance with generally accepted accounting procedures, and that Fox knew or should have known that Saxon's financial statements contained material misstatements.

In addition to the class action suit, 18 private civil lawsuits have been filed in the United States District Court for the Southern District of New York against directors and officers of Saxon and against Fox.[2]

---

1. On July 16, 1982, these twelve class action plaintiffs commenced an adversary proceeding against Saxon seeking to terminate, modify or annul the automatic stay granted to Saxon under § 362(a) of the Bankruptcy Code.

2. (a) *Norwest National Bank of Minneapolis v. Fox, et al.,* 83 Civ. 1536 (S.D.N.Y.) (MJL);
(b) *Crocker National Bank v. Fox et al.,* 83 Civ. 1596 (S.D.N.Y.) (MJL);
(c) *First National Bank of Minneapolis v. Fox, et al.,* 83 Civ. 1597 (S.D.N.Y.) (MJL);
(d) *First National Bank of St. Paul v. Fox, et al.,* 83 Civ. 1598 (S.D.N.Y.) (MJL);
(e) *Midlantic National Bank of Arizona v. Fox, et al.,* 83 Civ. 1599 (S.D.N.Y.) (MJL);
(f) *Valley National Bank of Arizona v. Fox, et al.,* 83 Civ. 1600 (S.D.N.Y.) (MJL);
(g) *Bank Hapoalim, B.M. v. Fox, et al.,* 83 Civ. 1601 (S.D.N.Y.) (MJL);

(h) *Panasonic Industrial Co. v. Stanley Lurie, et al.,* 83 Civ. 1896 (S.D.N.Y.) (MDL);
(i) *BA Commercial Corporation v. Fox,* 83 Civ. 1273 (S.D.N.Y.) (MJL);
(j) *Distribix, Inc. v. Stanley Lurie, et al.,* 83 Civ. 7208 (MJL);
(k) *Harry Lewis v. Stanley Lurie, et al.,* 83 Civ. 3760 (S.D.N.Y.) (MJL);
(l) *Walter E. Heller & Co. v. Stanley Lurie, et al.,* 83 Civ. 6129 (S.D.N.Y.) (MJL);
(m) *UMB Bank and Trust Co. and United Mizrahi Bank, Ltd. v. Stanley Lurie, et al.,* 83 Civ. 6280 (S.D.N.Y.) (MJL);
(n) *State Bank of India v. Fox et al.,* 83 Civ. 7036 (S.D.N.Y.) (MJL);
(o) *Wells Fargo Bank, N.A. v. Fox et al.,* 83 Civ. 7307 (S.D.N.Y.) (MJL);
(p) *Stanley J. Harte v. Saxon Industries, Inc., et al.,* 83 Civ. 7351 (S.D.N.Y.) (MJL);
(q) *American Leasing Investors III–A v. Fox, et al.,* 83 Civ. 8320 (S.D.N.Y.) (MJL); and

They make allegations that are substantially similar to those made by the class action plaintiffs.

Finally, 19 state court actions have been commenced against Fox [3]; 13 of these were filed in Supreme Court of New York county, two in Maryland, two in different counties in California, and one in New Jersey. They allege negligence, gross negligence, common law misrepresentation or fraud. All arise out of Fox's auditing of Saxon, and are based upon the claim that Saxon, for many years, issued false and misleading financial statements and reports.

On or about March 17, 1983, in the United States District Court for the Southern District of New York, Saxon commenced an action entitled *Saxon Industries, Inc. v. Fox, et al.*, 83 Civ. 2088 (MJL) (*Saxon v. Fox*). The allegations set forth in Saxon's complaint substantially mirror those raised by the class action plaintiffs, the 18 private suits pending in federal court, and the 19 state court actions. Fox's liability in these actions is dependent upon proof that (a) Saxon misrepresented its financial condition in its financial statements and reports, and (b) Fox was aware of these misrepresentations and gave knowing and substantial assistance to Saxon. But for the automatic stay, Fox would assert counterclaims or cross-claims and claims for contribution and indemnity against Saxon in these pending actions.

Fox in essence contends that Saxon, by bringing a suit which puts in issue the allegations raised in 38 other actions pending against Fox and/or Saxon, has flung open the doors, permitting Fox to bring Saxon into all these suits, as well as to counterclaim in *Saxon v. Fox*, so as to resolve the issue of liability.

Saxon argues that (a) permitting such a result would violate the policy behind the automatic stay of allowing the debtor a breathing spell in which to formulate a plan of reorganization, and (b) it would constitute a waste of the debtor's assets, because Fox's claims against Saxon would necessarily be subordinated as a contingent claim under § 502(e)(1)(B) of the Code, or as a claim arising from the purchase or sale of a security (§ 510(b)), or under principles of equitable subordination (§ 510(c)). In other words, Saxon is claiming that Fox stands no chance of recovering anything from Saxon, so to force Saxon to litigate these actions would needlessly divert its

(r) *International Paper Company and Borden, Inc. v. Fox, et al.*, 84 Civ. 0732 (S.D.N.Y.) (MJL).

3.  (a) *Norwest Bank of Minneapolis v. Fox, et al.*, Index No. 05399/83 (Sup.Ct.N.Y.Co.);
(b) *Crocker National Bank v. Fox et al.*, Index No. 05136/83 (Sup.Ct.N.Y.Co.);
(c) *First National Bank of Minneapolis v. Fox, et al.*, Index No. 05135/83 (Sup.Ct.N.Y.Co.);
(d) *First National Bank of St. Paul v. Fox, et al.*, Index No. 05134/83 (Sup.Ct.N.Y.Co.);
(e) *Midlantic National Bank v. Fox, et al.*, Index No. 05133/83 (Sup.Ct.N.Y.Co.);
(f) *Valley National Bank of Arizona v. Fox, et al.*, Index No. 05132/83 (Sup.Ct.N.Y.Co.);
(g) *Bank Hapoalim, B.M. v. Fox et al.*, Index No. 05131/83 (Sup.Ct.N.Y.Co.);
(h) *National Bank of North America v. Stanley Lurie, et al.*, (Sup.Ct.N.Y.Co.);
(i) *Dorothy Sands, in behalf of herself and all other parties similarly situated and circumstanced v. Fox, et al.*, Index No. 16694/82 (Sup.Ct.N.Y.Co.);
(j) *The Savers Leasing Corp. v. Fox, et al.*, Law No. 62538, Circuit Court, Montgomery Co., Md.;

(k) *Summit Leasing & Capital International Corporation v. Barry Waite, Wilberg Harold McCaulley, and all other partners doing business as Fox, a partnership*, Case No. 83–609, 11th Judicial Circuit Court, Dade County, Florida;
(*l*) *Chase Commercial Corp. v. Fox, et al.*, Index No. 06929/83 (Sup.Ct.N.Y.Co.);
(m) *Panasonic Industrial Co. v. Stanley Lurie, et al.*, Index No. ____/83 (Sup.Ct.N.Y.Co.);
(n) *International Paper Co. and Borden Inc. v. Fox*, Index No. 14097/83 (Sup.Ct.N.Y.Co.);
(o) *Wells Fargo Bank, N.A. v. Fox, et al.*, No. 113166, Superior Court of the State of California, County of Marin.
(p) *Inter-Polymer Industries, Inc. v. Fox, et al.*, No. WE C 080952, Superior Court of the State of California, County of Los Angeles;
(q) *UMB Bank and Trust Co. and United Mizrahi Bank, Ltd. v. Stanley Lurie, et al.*, Index No. ____/83 (Sup.Ct.N.Y.Co.);
(r) *C.C. Leasing Corp. v. Fox, et al.*, Law No. 65885, Circuit Court, Montgomery Co., Md.; and
(s) *Union Camp Corp. v. Fox, et al.*, No. L–081252-83, Superior Court of New Jersey, Law Division, Passaic County.

assets, causing the debtor and its unsecured creditors great prejudice, while not benefiting Fox in the least.

The automatic stay provision of § 362(a) does not prevent Saxon from bringing claims against other parties so as to marshal its assets, including its litigation against Fox. However, where, as here, a debtor brings a lawsuit and then invokes the automatic stay to prevent the defendant from asserting counterclaims, the Second Circuit has stated that "the situation warrants a very thoughtful scrutiny". *Bohack Corp. v. Borden, Inc.*, 599 F.2d 1160, 1168 (2d Cir.1979).

> "The purpose of the (automatic stay) is the protection of the debtor, but when the debtor is in the position of assailant rather than victim, the potential for abuse of that purpose is manifest."

*Id.*

In light of the litigation initiated by Saxon, it would clearly be inequitable to allow Saxon to use § 362 to prevent Fox from pressing counterclaims. The stay is therefore modified to permit Fox to counterclaim in *Saxon v. Fox*, 83 Civ. 2088 (MJL).

This court also modifies the stay so as to permit Fox to implead Saxon as a third-party defendant in the class action *In re Saxon Securities Litigation*, 82 Civ. 3103 (MJL) and in the 18 separate lawsuits pending in the United States District Court for the Southern District of New York.[4] The claims of all the plaintiffs closely parallel those made in *Saxon v. Fox*, and the actions are in the same court and before the same judge. Therefore, it will not greatly prejudice Saxon to allow these actions to proceed in their original forum. S.Rep. No. 989, 95th Cong., 2d Sess. 50 (1978), *reprinted in* (1978) U.S.Code Cong. and Ad.News 5787, 5836.

Further, so as to avoid inconsistent results, this court modifies the stay to permit Fox to implead Saxon in the 17 pending state court actions.[5]

The court is cognizant ·of Saxon's argument that it would constitute a waste of assets of the estate to require Saxon to litigate these claims because, as Saxon alleges, they would all be contingent, or subordinated to the point where Fox would be entitled to no recovery at all. However, subordination relates to the postponement of claims, not to their disallowance, and is inappropriate for consideration in an automatic stay proceeding. The "contingent claim" argument is based on a misreading of § 502(e)(1)(B) of the Code, which involves the claim for reimbursement or contribution of a co-debtor, surety or guarantor of an obligation of the debtor. H.R. Rep. No. 595, 95th Cong., 1st Sess. 354 (1977); S.Rep. No. 989, 95th Cong., 2d Sess. 65 (1978) U.S.Code Cong. & Admin.News 5851, 6310. Where equitable considerations merit lifting of the stay, as here, the debtor's legal costs are not a consideration. *Bohack Corp. v. Borden, Inc.*, 599 F.2d at 1168.

Although at first glance, a large number of actions are involved in this application, because of the close similarity of the .issues, lifting of the stay with respect to Fox is far from the "chaotic and uncontrollable scramble for the debtor's assets in a variety of uncoordinated proceedings in different courts" envisioned by the Second Circuit in *Fidelity Mortgage Investors v. Camelia Builders, Inc.*, 550 F.2d 47, 55 (2d Cir.1976), *cert. denied*, 429 U.S. 1093, 97 S.Ct. 1107, 51 L.Ed.2d 540 (1977).

It is so ordered.

---

**4.** Listed in note 2, *supra.*

**5.** Listed in note 3, *supra.*